**IN THE COURT OF APPEALS OF IOWA**

No. 24-0874
Filed August 21, 2024

**IN THE INTEREST OF D.W.,**
**Minor Child,**

**A.H., Mother,**
Appellant.
_____

Appeal from the Iowa District Court for Warren County, Kevin Parker, Judge.

A mother appeals the termination of parental rights and denial of her request for additional time. **AFFIRMED.**

Nancy L. Pietz, Des Moines, attorney for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Magdalena B. Reese of Des Moines Juvenile Public Defender, Des Moines, attorney and guardian ad litem for minor child.

Considered by Schumacher, P.J., and Chicchelly and Buller, JJ.

**BULLER, Judge.**

The mother appeals the termination of her parental rights to D.W. (born 2020). She challenges whether sufficient evidence supported termination, whether termination was in D.W.'s best interests, whether she should have been granted additional time, and whether a permissive exception applies. The father was in federal prison as of trial and his rights are not at issue in this appeal. After reviewing the juvenile court's ruling, and acknowledging some deficiencies in the court's order, we affirm.

## I.      Background Facts and Proceedings

This family came to the attention of the Iowa Department of Health and Human Services (HHS) in early 2022, after the mother left infant D.W. alone in an upstairs bedroom overnight without telling her parents (whom she lived with) that she was leaving to meet up with her boyfriend. The bedroom the mother shared with D.W. had choking hazards, rotting food, insects, sharp objects, and rotten milk in areas accessible by the child. A child protection worker observed "the crib of the baby was piled full of random objects and debris making it seem more of a trash can or storage space than a bed." In contrast, all other rooms of the home were "clean, tidy, and comprised no safety hazards or concerns."

HHS removed D.W. from the mother and placed him with his maternal grandparents. The juvenile court then adjudicated D.W. a child in need of assistance (CINA). After the removal, the mother moved out of her parents' house and began living with friends. The mother had visits supervised by social workers and her parents, though she was inconsistent in attending. The mother's parents provided essentially all care for D.W., including his medical needs, even when the

mother was staying in the home or visiting. During the summer of 2022, the juvenile court granted a formal extension of time to remedy the need for removal by the mother demonstrating the ability to "provide a safe, stable home for her child."

The mother gave birth to another child in 2023. HHS records indicated the mother used marijuana recreationally during that pregnancy and she tested positive for tetrahydrocannabinol (THC) despite insisting to a social worker that she would test negative. The child also testified positive for THC at birth.

A few months later, the mother and her paramour (father of the other child) got into a physical altercation, leading to charges against the mother for domestic abuse assault causing bodily injury. From our review of the record, both parties appear to have perpetrated physical violence against the other over the course of the relationship. The mother told a social worker her paramour got drunk, "wouldn't leave," and "physically assaulted her." The social worker saw "bruises and welts" on the mother's body. After this, the mother had to find new housing because she could no longer stay with her paramour and she ended up back at her parents' house. In the social worker's view, this was a significant setback.

Permanency hearings in July and November 2023 were reported, but the transcripts were not ordered, so any oral findings or instructions are not part of this record on appeal. By January 2024, the court ordered the mother to leave her parents' house, engage in mental-health treatment, and inform her probation officer she had consumed alcohol. After a series of additional continuances, the court held another contested permanency hearing and termination trial in April.

As of trial, the mother was temporarily living with a friend and working on obtaining her own residence with help from a local housing organization. She testified she was recently reengaged with mental-health treatment through a new provider after addressing issues with her insurance. She acknowledged she had been diagnosed with borderline personality disorder and that she had stopped her medication. Other records indicated she experiences depression and anxiety. And police records indicated past self-harm incidents. The mother testified she had not used any controlled substances since using marijuana in November.

An HHS worker testified the mother had "no consistent therapy for mental health or substance abuse." But the worker also acknowledged the mother had seen a therapist for a period of time and recently reengaged in treatment with a new provider. As of trial, HHS no longer believed the mother was actively using controlled substances but had ongoing concerns about the mother's mental health and decision-making.

The mother described visits with the child as going well. HHS allowed the grandparents to supervise the visits without any HHS involvement. But, despite this access, the mother only visited the child about once per week. During these limited visits, the mother parented appropriately.

The mother first testified that D.W. could not be returned to her care as of trial because she did not have housing. But, following questioning by her attorney, she clarified that she thought D.W. could be returned to her care because she was living with her friend—though she hadn't told her friend she wanted D.W. to live with them. The mother also initially said the relief she sought was additional time, then clarified she was also asking for D.W. to be returned to her care as of that

date. And, when asked whether the concerns that led to the court's involvement had "resolved," she answered: "I don't think it's bad like it was back then."

By all accounts, the child was doing well while placed with his grandparents and had experienced minimal disruptions. The grandparents were willing to adopt if the mother's parental rights were terminated.

The county attorney, HHS, and the child's guardian ad litem all recommended termination of parental rights. The juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(d) and (h) (2024). The mother appeals.

## II. Standard of Review

We review termination decisions de novo. *In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021). "We are not bound by the factual findings of the juvenile court, though we give them respectful consideration, particularly with respect to credibility determinations." *Id.*

## III. Discussion

Before delving into the merits, we confront a problem with our review of the juvenile court's decision. While the court's ruling includes a summary of trial testimony and generalized statements of law, the ruling does not apply the law to the facts. The court's legal analysis on the elements is limited to this sentence: "Facts sufficient to establish the grounds for termination of the parental rights of the parents as to the child in interest have been established by clear and convincing evidence." But there is no indication what facts were relied on by the court or why. And the court's legal analysis on the child's best interests is limited

to the following sentence—"Termination of parental rights is in the best interests of the child in interest"—followed by boilerplate that is not case-specific.

These generic sentences are not sufficient to permit meaningful appellate review. *Cf. State v. Thacker*, 862 N.W.2d 402, 409 (Iowa 2015) (requiring a statement of reasons "sufficient to allow meaningful appellate review" in the context of criminal sentencing). But because our review is de novo and we wish to avoid any delay with a remand directing the juvenile court to complete its ruling by applying the law to the facts, we assess the mother's claims without the benefit of a more detailed ruling. *Cf. In re J.C.*, No. 11-1936, 2012 WL 469807, at *4 (Iowa Ct. App. Feb. 15, 2012) (reviewing "the facts anew" where the juvenile court did "not analyze why the facts of this case compel its conclusion").

**Statutory elements.** Although the juvenile court terminated the mother's rights under both sections 232.116(1)(d) and (h), we need only find one ground supported by the evidence to affirm. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We focus our review on section 232.116(1)(h), and the only element the mother contests on appeal is that the child could be returned to her custody as of trial. *See* Iowa Code § 232.116(1)(h)(4). We conclude the child could not be safely returned to the mother's care. *In re A.S.*, 906 N.W.2d 467, 473 (Iowa 2018). As the mother admitted, her living arrangements were less than stable, and it was not clear the friend she was living with would allow her to continue living there indefinitely with a child. Her mental-health treatment was not consistent and had not adequately resolved her longstanding mental-health problems. Again as she admitted, the issues persisted even though she did not think it was "bad like it was back" when the case started. We also recognize the mother has not cared for the

child in unsupervised visits or trial home placements and demonstrated little if any capacity to successfully parent without the supervision and assistance of the child's grandparents. *See, e.g.*, *In re C.N.*, No. 19-1861, 2020 WL 567283, at *1 (Iowa Ct. App. Feb. 5, 2020) ("[The mother] never progressed to unsupervised visits or trial home visits. Without this necessary progression, we cannot say the children could have returned to the mother's care."). We find on our de novo review that the challenged statutory grounds under section 232.116(1)(h) were satisfied.

**Best interests.** The mother also contests whether termination is in the child's best interests. On review, we give primary weight "to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). The record is largely undisputed that the child is thriving in the grandparents' care, while we have already identified termination is appropriate given the mother's instability, mental-health problems, and unsuccessful track record parenting this child and another. Termination is in the child's best interests.

**Additional time.** The mother next contends she should have received another extension of time to work toward reunification. The State contests whether the mother preserved this issue or waived it due to inadequate briefing on appeal. Looking at the record below, the mother did ask for additional time in her own testimony before being redirected by her attorney. But she did not request this relief in closing argument and the juvenile court never ruled on a request for additional time. We conclude the issue was not preserved. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the

district court before we will decide them on appeal.").  And even if it had been, we would find the appellate claim waived, as there is no substantive argument on this point in the mother's petition on appeal and we would have to develop the legal arguments to adequately consider it.  *See Inghram v. Dairyland Mut. Ins. Co.*, 215 N.W.2d 239, 240 (Iowa 1974) (declining to "assume a partisan role and undertake the appellant's research and advocacy").  Regardless, we would not be inclined to grant the mother another formal extension when she already squandered one formal extension and the additional time afforded by a series of continuances.

**Permissive exceptions.**  Last, the mother asks us to apply permissive exceptions that she maintains should preclude termination.  As to the relative-custody-exception at section 232.116(3)(a), the juvenile-court orders placed legal custody with HHS (not the grandparents), rendering this exception inapplicable.  *See In re A.B.*, 956 N.W.2d 162, 170 (Iowa 2021).  As for the bond exception at section 232.116(3)(c), we agree with the juvenile court the mother failed to carry her burden to prove by clear and convincing evidence the existence of a bond or the detriment that would be caused by severing the parental relationship.  *See In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016) (noting we consider the bond in the context of a case's unique circumstances and the child's best interests).  Like the juvenile court, we decline to apply any permissive exception to thwart termination.

**AFFIRMED.**